[Civ. No. 7903. Third Dist. Aug. 4, 1951.]

HARRIET O. WHITE et al., Appellants, v. ED WALSH et al., Respondents.

Kasch & Cook and Leo M. Cook for Appellants.

McCowen & McCowen and Hale McCowen for Respondents.

SCHOTTKY, J. pro tem.—Plaintiffs are the owners of agricultural land through which defendants and their predecessors in interest have a right of way for a road 16 feet wide which had been established by a judgment entered on March 12, 1948. The present action was commenced on September 20, 1949, it being alleged in the complaint that defendants "have hauled and placed thereon [the right of way], and also outside of the boundaries of the same, great quantities of rock and gravel, and have raised the elevation thereof," and that the effect of such work by defendants will be to "prevent and preclude the winter waters from flowing as they have been accustomed to do into the Russian River and said waters will back up and flood the lands of Plaintiffs and will remain thereon to the damage of said orchard and hop yard . . . of Plaintiffs." Plaintiffs sought a mandatory injunction compelling defendants to remove all rock and gravel placed upon said right of way and to restore the roadway to its previous condition, a prohibitory injunction enjoining defendants from raising the levels of the portions of the roadway which had not been raised, a declaratory judgment that defendants had no right to raise the level of the road and no right to travel outside the 16-foot limits previously established, and damages in the sum of $5,000.

Defendants denied substantially all of the allegations of the complaint with the exception of the existence of the previous judgment.

After a trial the court found that on March 12, 1948, a judgment was entered by which the predecessors of defendants were decreed to be the owners of a right of way *16 feet* in width; that a controversy has arisen as to whether defendants have the right to raise the height of the road; that defendants have raised the elevation of the road by placing gravel, rock and dirt thereon; that the drainage of water from plaintiffs' real property was not interfered with by such raising nor has it caused any damage to plaintiffs; that defendants are entitled to a right of way 16 feet wide and no wider, as fixed

by the prior judgment, and that defendants have not widened it beyond the 16 feet; that the roadway was, at the time of trial, in excess of 16 feet in width, in places, but defendants do not claim a right of way greater than 16 feet in width and they have not threatened to use a roadway of any greater width.

Judgment was entered in accordance with said findings, it being decreed therein that plaintiffs take nothing by this action except that it was thereby declared that defendants have the use of the right of way only as fixed in the judgment (in the previous action); that defendants, so long as an undue burden on plaintiffs' land was not created thereby, have the right to raise the level of the right of way.

Plaintiffs have appealed from the judgment and urge a number of grounds for a reversal of the judgment.

Plaintiffs' principal contention is: "Defendants had no right to raise the road above its height on March 12, 1948; any increase in height which increased the burden on plaintiffs' land entitled plaintiffs to equitable relief to restore the 'status quo' as to height."

Before discussing this contention we shall summarize briefly the factual situation as disclosed by the record, resolving, as we must, all conflicts in favor of defendants and respondents. Plaintiffs are the owners of the servient tenement—agricultural lands devoted principally to fruit trees. Defendants Ford own the adjacent Ford Ranch to the north and a 16-foot right of way for a road across plaintiffs' property, said right of way having been established by the 1948 judgment, and being approximately 2,600 feet long. Defendants Ed Walsh and Milton Ford operate a gravel and cement business on the "Ford Ranch" which has been in continuous operation since 1932. Prior to September, 1949, a portion of said right of way was even with or higher than the orchard and a portion was lower, and after a storm water would remain on portions of the right of way for as much as a month. In September, 1949, defendants Walsh and Milton Ford placed gravel and dirt on about 1,000 feet of the right of way at its northeast end, but did not place any material on the west end. The evidence is conflicting as to how much the elevation of the road was raised where the material was placed, but a fair deduction from the evidence would be that the raise was not less than 6 inches or more than 1 foot. Said defendants testified that they desired to raise the elevation of the right of way only to an elevation which would provide

for drainage and planned to put on a hard surface so they could haul in the wintertime, but that they were stopped by plaintiffs after the material was placed on the first 1,000 feet. The evidence showed that water still stands on portions of the right of way that have not been raised.

In support of their contention appellants quote the well-settled rule stated in 9 California Jurisprudence, page 952, as follows:

"When once fixed . . . the location and extent of an easement cannot be materially changed by either party without the consent of the other, even though the change in question might benefit the servient estate."

And appellants also quote from 17 American Jurisprudence, page 1005, as follows:

"The latter [owner of an easement] may make the way as usable as possible for the purpose of the right owned so long as he does not increase the burden on the servient tenement or unreasonably interfere with the rights of the owner thereof."

Respondents do not dispute that the rule is as above stated, but argue that under the findings of the court, which they contend are amply sustained by the record, the raising of the elevations of the road did not interfere with the drainage of water from plaintiffs' land nor has it caused damage to plaintiffs. Defendants point out also that the trial court at the request of plaintiffs' counsel viewed the premises. The record shows that counsel for plaintiffs, shortly before the end of the trial, stated: "There is just one other matter, your Honor, as far as the plaintiffs' case is concerned. I believe that a viewing of the actual site by the court would be of much more assistance than the testimony of witnesses or the pictures of the place." The court, in expressing its willingness to view it, stated: "Looks like now would be a good time to look at it. Been quite a lot of water lately."

As this court said in *Peckwith* v. *Lavezzola*, 50 Cal. App.2d 211, at page 217 [122 P.2d 678]: "It is true that conditions observed by a judge or jury, while inspecting the premises, constitute independent evidence which may be considered by them in determining the issues involved." And as stated in *Gates* v. *McKinnon*, 18 Cal.2d 179, at pages 182-183 [114 P.2d 576]: "The law is clear that when a view of the scene of an accident is made by the trier of facts the conditions observed and properly bearing on the case, are inde-

pendent evidence which may be considered by the trier of facts in arriving at its decision." (See, also, *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647, 654 [122 P.2d 576].)

No useful purpose will be served by discussing the decisions cited by appellants in support of their contention as there is no dispute as to the rule stated by them. ▮ But it is also the law, as stated in *Ballard* v. *Titus,* 157 Cal. 673, 681 [110 P. 118], that a right of way is a privilege of passage over the land of another, "with the implied right, of course, under such circumstances, to make such changes in the surface of the land as are necessary to make it available for travel in a convenient manner." ▮ Of course this does not mean that the owner of the right of way may so change the surface of the land as seriously to damage the usefulness of the servient estate; and as stated in *Burris* v. *People's Ditch Co.,* 104 Cal. 248, at page 252 [37 P. 922]:

"It is well settled that the owner of an easement cannot change its character, or materially increase the burden upon the servient estate, or injuriously affect the rights of other persons, but within the limits named he may make repairs, improvements, or changes that do not affect its substance. An easement of the character involved in this case is property, to the reasonable and profitable use and improvement of which, due regard being had to the rights of others, the owner is entitled."

And as stated in *Zimmerman* v. *Young,* 74 Cal.App.2d 623, at page 628 [169 P.2d 37]:

"The right to use the property for road purposes carried with it a right to make necessary and reasonable improvements for the purpose for which it was intended to be used. The evidence does not show that the burden on the servient estate has been unreasonably increased, resulting in irreparable injury thereto."

▮ We are satisfied that the record supports the findings of the trial court, and that the court was fully justified in concluding that defendants were proceeding in a reasonable and proper manner to repair and raise the elevation of the road so that it would be usable as a road; that plaintiffs could not reasonably expect to use defendants' right of way for a road as a drainage ditch for a part of plaintiffs' land; and that no damage had resulted or would result to plaintiffs' land from the repairs that defendants were making to said roadway.

■ Appellants contend also that they "are entitled, as a matter of right, to equitable relief against defendants' acts which constitute a continuous trespass on plaintiffs' property; and a sufficient use to base a prescriptive claim to the entire 22.2 foot wide physical road."

There was some evidence that at some points of the 16-foot right of way the road was wider than 16 feet and that some gravel and dirt had been found outside of the 16-foot right of way. The right of way was not fenced, the former judgment having provided that defendants should have no right to fence it; and it would not be surprising if the used portion of the road may have extended at some points beyond the 16-foot limit. The court found that defendants were entitled to a right of way 16 feet wide and no wider and that defendants have not widened it beyond the 16 feet; that the roadway was at the time of the trial in excess of 16 feet in width, but that defendants do not claim a right of way greater than 16 feet in width and they have not threatened to use a roadway of any greater width. It is difficult to understand how, under such findings and judgment, defendants could acquire a prescriptive right to a right of way of more than 16 feet in width. Furthermore, the record supports the court's finding that defendants have not widened the right of way beyond 16 feet, and in view of the fact that they do not claim the right to do so we do not believe that an injunction enjoining them from doing something that they have neither done nor claimed the right to do would be justified. In *Hannah v. Pogue*, 23 Cal.2d 849 [147 P.2d 572], the court said at page 858: "Defendant Smith was improperly enjoined from entering plaintiff's land, for there was no evidence that he had ever entered without plaintiff's consent, or that he intended to do so."

No other points raised require discussion.

We are convinced that the record fully supports the findings of fact made by the trial court, and that the conclusions reached by it are supported by sound principles of law and equity.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.